1  **WO**

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  Sandra E. Reichard,                              No. CV-14-08159-PCT-DGC

10                              Plaintiff,           **ORDER**

11  v.

12  Carolyn W. Colvin,

13                              Defendant.

14

15          Plaintiff Sandra E. Reichard seeks review under 42 U.S.C. § 405(g) of the final

16  decision of the Commissioner of Social Security, which denied her disability insurance

17  benefits and supplemental security income under sections 216(i), 223(d), and

18  1614(a)(3)(A) of the Social Security Act.  Because the decision of the Administrative

19  Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error,

20  the Commissioner's decision will be affirmed.

21  **I.      Background.**

22          Plaintiff was born on July 7, 1964.  She left school during the tenth grade and later

23  acquired a GED.  She has been a convenience-store cashier, a night stocker at a retail

24  store, a kennel keeper for a veterinarian, a food handler at a grocery store, and a baker.

25  Plaintiff is also a regular smoker.  Plaintiff started smoking when she was 12 and now

26  smokes a pack or two a day.  Sometime after 2008, Plaintiff stopped working.  Among

27  other ailments, she suffers from shortness of breath and has been diagnosed with chronic

28  obstructive pulmonary disease.  On September 26, 2010, she applied for disability

insurance benefits and supplemental security income, alleging disability beginning February 5, 2010.  On December 7, 2012, the ALJ held a hearing and Plaintiff appeared by video teleconference.  Plaintiff's attorney was present at the hearing and a vocational expert testified.  On January 10, 2013, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.

## II.     Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a scintilla, but less than a preponderance.  *Id.*  It is relevant evidence that a reasonable person might accept as adequate to support a conclusion.  *Id.*  In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence."  *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).  The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion."  *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III.    The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears

the burden of proof on the first four steps, but at step five the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014, and that she has not engaged in substantial gainful activity since February 5, 2010. At step two, the ALJ found that Plaintiff has the following severe impairments: chronic obstructive pulmonary disease ("COPD"), mild degenerative disc disease of the lumbar spine, and compression fracture of the thoracic spine. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform "light work as defined in 20 C.F.R 404.1567(b) and 416.967(b) except she can frequently climb, stoop, kneel, crouch, crawl, and reach; and she has restrictions working around extremes in temperature, with or around chemicals,

and around dust/fumes or gases."  A.R. 84-85.  The ALJ further found that Plaintiff is able to perform her past work as a baker, food handler, and cashier.  A.R. 91.  For that reason, the ALJ found that Plaintiff is not disabled.  *Id.*

**IV.    Analysis.**

Plaintiff argues the ALJ's decision is defective for three reasons: (1) the ALJ erred in discounting Plaintiff's pulmonary tests and finding that Plaintiff's lung condition did not meet a listing under which she would be deemed disabled, (2) the ALJ erred in rejecting the opinion of Dr. McEleney, a treating physician, in favor of Dr. Brecheisen, an examining physician, and (3) the ALJ erred in rejecting the opinions of two nurse practitioners.  The Court will address each argument below.

**A.    Chronic Obstructive Pulmonary Disease.**

Plaintiff argues that the ALJ erred in finding that Plaintiff's lung condition did not meet or medically equal listing 3.02.  Under this listing, a person of Plaintiff's height who has a FEV1 – a measure of the volume of air a person can exhale in one second – that is less than or equal to 1.15 liters is considered disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  This disability is chronic obstructive pulmonary disease.  *Id.*  The ALJ found:

> The claimant's impairments, considered singly and in combination, do not meet or medically equal the criteria of any medical listing, including listing 3.02. . . .  While the record contains pulmonary function tests, these tests were all incomplete.  Some of the tests suggested poor or inadequate effort by the claimant.  Thus, these tests are invalid and cannot be used to determine whether the COPD meets the criteria of medical listing 3.02.

A.R. 84 (citations omitted).

The ALJ cited numerous tests.  Although these tests showed an abnormally low FEV1, the testers noted that Plaintiff made an inadequate effort or was unable to complete the test.  A.R. 361, 495, 568, 574, 616.  For example, after recording a FEV1 of 0.42, one tester noted:

> The above study is not a true representation of the claimants [sic] condition. After repeated instruction on how to perform the PFT test adequately, and after numerous attempts, the patient still displayed poor effort during the

exam.  Claimant was unusually interested in her FEV1 number after each attempt. . . .  I would characterize this claimant as noncompliant with this test, even after repeated instruction on how to perform the test properly.

A.R. 568.  The ALJ did not err in rejecting these tests when the testers themselves found that the results were questionable.

Plaintiff criticizes the ALJ for failing to cite or discuss a test that listed Plaintiff's FEV1 as being between 1.07 and 1.14.  A.R. 399.  But this same test stated: "Caution: Only One Acceptable Maneuver – Interpret With Care."  *Id.*  Thus, the test was questionable, with the tester specifically urging caution.

Plaintiff also faults the ALJ for rejecting a test that listed a low FEV1 and that stated its results were "acceptable."  A.R. 484.  But again, the technician noted that Plaintiff gave "inadequate effort."  A.R. 361.[1]

Plaintiff correctly cites portions of the record that discuss her shortness of breath and coughing.  A.R. 366, 402, 619.  But documented shortness of breath and coughing do not prove that Plaintiff has a FEV1 below 1.15, nor do they undermine the ALJ's reason for rejecting the tests.  Furthermore, the ALJ reasonably discounted Plaintiff's allegations of shortness of breath based on her continued smoking of up to two packs a day.  A.R. 86.  The ALJ's conclusion that Plaintiff's condition did not satisfy listing 3.02 was reasonable and based on substantial evidence in the record.  *See, e.g.*, *Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (upholding ALJ's decision to reject a test that was "susceptible to subject manipulation").

**B.    Weighing of Medical Source Evidence.**

Plaintiff argues that the ALJ improperly rejected the medical opinion of Dr. Emmett McEleney, M.D.  Plaintiff also argues that the ALJ gave too much weight to the opinion of Dr. Mark Brecheisen, D.O.

---

[1] Although the technician's notes and the results are separated in the record, the notes bear the same date as of the test and record the same spirometer that was used for the test.  A.R. 361, 484.

1       **1.    Legal Standard.**

2       The Ninth Circuit distinguishes between the opinions of treating physicians,

3  examining physicians, and non-examining physicians.  *See Lester v. Chater*, 81 F.3d 821,

4  830 (9th Cir. 1995).   Generally, an ALJ should give greatest weight to a treating

5  physician's opinion and more weight to the opinion of an examining physician than to

6  one of a non-examining physician.  *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th

7  Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6).  If it is not contradicted by another

8  doctor's opinion, the opinion of a treating or examining physician can be rejected only

9  for "clear and convincing" reasons.  *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849

10  F.2d 418, 422 (9th Cir. 1988)).  But when the opinion is contradicted by another doctor,

11  the ALJ may reject that opinion "for specific and legitimate reasons that are supported by

12  substantial evidence in the record."  *Id.* at 830-31 (citing *Andrews*, 53 F.3d at 1043).  An

13  ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed

14  and thorough summary of the facts and conflicting clinical evidence, stating his

15  interpretation thereof, and making findings."  *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th

16  Cir. 1986).  "The ALJ must do more than offer his conclusions.  He must set forth his

17  own interpretations and explain why they, rather than the doctors', are correct."  *Embrey*,

18  849 F.2d at 421-22.

19       **2.    Dr. Emmett McEleney, M.D.**

20       Dr. McEleney's medical opinion was contradicted by the opinion of Dr. Mark

21  Brecheisen.  For example, Dr. Brecheisen found that Plaintiff would be able to sit, stand,

22  or walk for six to eight hours in a workday (A.R. 358), while Dr. McEleney found that

23  she could perform these activities for less than two hours in a workday (A.R. 630).

24  Because of this contradiction, the ALJ was required to give specific and legitimate

25  reasons for rejecting Dr. McEleney's opinion.  *Lester*, 81 F.3d at 830-31.

26       The ALJ discounted Dr. McEleney's opinion "because it is unsupported by the

27  record.  Dr. McEleney's notes do not support the extreme limitations he assessed.  His

28  notes documented minimal objective findings."   A.R. 90.  A discrepancy between a

doctor's notes and his final opinion can be a specific and legitimate reason for rejecting a doctor's opinion.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding that such a discrepancy is a "clear and convincing reason for not relying on the doctor's opinion").   On July 25, 2011, Dr. McEleney examined Plaintiff and noted that she "continues to improve . . . . is progressing with the rehab . . . . [and] says the home therapy has yielded significant benefits."  A.R. 560.  He also reported that the result of the physical examination was "benign findings" and stated that he would see Plaintiff again "on an as-needed basis."  *Id.*  On March 19, 2012, Dr. McEleney wrote an opinion regarding Plaintiff's ability to work.  A.R. 630.  He found that Plaintiff was severely limited in her ability to work and that her condition would cause her to be absent from work more than three times a month.  *Id.*  Dr. McEleney's "benign findings" and reports of progress are inconsistent with this opinion that Plaintiff's ability to work was severely limited.  By pointing to this discrepancy, the ALJ gave a specific and legitimate reason for rejecting Dr. McEleney's opinion.

### 3.      Dr. Mark Brecheisen, D.O.

Plaintiff argues that the ALJ gave too much weight to the opinions of Dr. Brecheisen, the state agency examiner, and the state agency reviewing physician.  But as already noted, the ALJ may favor the opinion of an examining physician such as Dr. Brecheisen over that of a treating physician if the ALJ gives specific and legitimate reasons.  The ALJ credited Dr. Brecheisen's opinion, as well as that of the state agency physician on the initial review, because it was "consistent with the evidence of [the] record, which while documenting a diagnosis of COPD, also showed non-compliance. The evidence of record showed that the claimant continued to smoke even though she was repeatedly advised to quit smoking.  Moreover, the notes showed that she was not compliant with medical treatment."  A.R. 91.

In support of this statement, the ALJ cited portions of the record that document Plaintiff's smoking habits.  A.R. 455.  The ALJ also relied on Dr. Nakao's report that Plaintiff's ailments do not have a "significant impact on activities of daily living.  The

claimant is able to complete self care activities including meals, hygiene, and house work.  The claimant is able to ambulate without significant limitations throughout the day."  A.R. 566.  This evidence supports Dr. Brecheisen's finding that Plaintiff's ability to work was not significantly limited.  A.R. 358-59.  The ALJ did not err in relying on Dr. Brecheisen's opinion.

### C.    The ALJ Did Not Err in Rejecting Nurse Practitioners' Opinions.

Plaintiff argues that the ALJ improperly rejected the opinions of nurse practitioners Jessee Vanleeuwen-Beloussow and Lisa Workman.  As already noted, "[i]n order to reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Only licensed physicians and certain other qualified specialists are considered "[a]cceptable medical sources."   20 C.F.R. § 404.1513(a).  Nurse practitioners are defined as "other sources," *id.* § 404.1513(d), and are not entitled to the same deference.  *Molina*, 674 F.3d at 1111.  An ALJ may discount testimony from nurse practitioners for reasons that are germane to each witness.  *Id.*

### 1.    Jessee Vanleeuwen-Beloussow, N.P.

The ALJ rejected Ms. Vanleeuwen-Beloussow's because "[a]n opinion that is not from an acceptable medical source is not entitled to be given the same weight as a qualifying medical source opinion.  Additionally, the treatment notes do not support the limitations she assessed."  A.R. 90.  As for the latter reason, the Court is unable to discern a discrepancy between Ms. Vanleeuwen-Beloussow's treatment notes and her opinion of Plaintiff's work capabilities.  *Compare* A.R. 619-20 *with* A.R. 631.  Both the notes and opinion concluded that Plaintiff suffers from chronic obstructive pulmonary disease, gastroesophageal reflux disease, and idiopathic hypersomnia.  These conditions could support Ms. Vanleeuwen-Beloussow's opinion that Plaintiff was severely limited in her ability to work.  A.R. 631.

The Court finds, however, that the ALJ could properly reject Ms. Vanleeuwen-Beloussow's opinion in favor of Dr. Mark Breschein's.  The ALJ discussed his reliance

on Dr. Brecheisen's opinion (A.R. 91) and, as noted, pointed to substantial evidence in support of so doing. An examining physician's opinion is entitled to more deference than that of a nurse practitioner. *See* SSR 06-03P, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). The ALJ therefore did not err in rejecting Ms. Vanleeuwen-Beloussow's opinion and gave germane reasons for so doing.[2]

## 2.    Lisa Workman, N.P.

The ALJ rejected Ms. Workman's opinion because she "is not an acceptable medical source, and she did not indicate any pertinent medical findings to support her limitations. . . . Ms. Workman's notes and the notes from these other specialists do not support the extreme limitations she assessed. The treatment records documented minimal clinical findings." A.R. 91. The Court finds some inconsistency between Ms. Workman's notes and the limitations she assessed. In her notes, Ms. Workman repeatedly found that Plaintiff has "no difficulty ambulating" (A.R. 458), that Plaintiff's "gait and stance [are] normal" (A.R. 438, 446), and that her "mobility was not limited" (A.R. 442). Ms. Workman had also advised Plaintiff to engage in "reg[ular] exercise especially on nice weather days with fast walking at the park." A.R. 443. These findings are inconsistent with Ms. Workman's final conclusion that Plaintiff was unable to stand and walk for more than two hours in a workday. A.R. 632. This inconsistency is a germane reason for rejecting Ms. Workman's opinion. Furthermore, as already

---

[2] Relying on *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996), Plaintiff argues that because Ms. Vanleeuwen-Beloussow worked with a doctor as an "interdisciplinary-team," her opinion is entitled to the same weight as that of a doctor. But the relevant regulations, 20 C.F.R. §§ 404.1513(a) and 416.913(a), have been amended since the *Gomez* decision, and the Commissioner no longer includes "interdisciplinary team," under the definition of "acceptable medical sources." *See Mack v. Astrue*, 918 F. Supp. 2d 975, 983 (N.D. Cal. 2013). Some district courts continue to recognize the vitality of the *Gomez* rule when the nurse practitioner acts as an agent of a doctor. *Id.* Here, Ms. Vanleeuwen-Beloussow's notes state that patient care was "provided under direct supervision of Dr. Matheny." A.R. 620, 832. Ms. Vanleeuwen-Beloussow's opinion regarding Plaintiff's ability to work, however, does not indicate Dr. Matheny's approval or involvement. A.R. 631. Plaintiff has not pointed to other evidence of an agency relationship. The Court finds that the ALJ could properly discount Ms. Vanleeuwen-Beloussow's opinion for germane reasons.

discussed, the ALJ was entitled to give greater deference to the opinion of Dr. Brecheisen.

> **IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**.  The Clerk shall enter judgment accordingly and **terminate** this case.

> Dated this 13th day of April, 2015.

David G. Campbell
United States District Judge